# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| SABRINA BRIONY DUNCAN, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 6:21-cv-03280-RK |
| | § | |
| JACK HENRY & ASSOCIATES, INC.; | § | |
| THE JACK HENRY & ASSOCIATES, | § | |
| INC. GROUP HEALTH BENEFIT PLAN; | § | |
| UMR, INC.; and QUANTUM HEALTH, | § | |
| INC., | § | |
| | § | |
| *Defendant.* | § | |

## UMR, INC.'S SUGGESTIONS IN SUPPORT OF ITS MOTION TO DISMISS

**Ann E. Buckley**, #26970
abuckley@buckleylawllc.comm
**BUCKLEY & BUCKLEY, L.L.C.**
800 Market Street, Suite 2900
St. Louis, MO 63101
T: (314) 621-3434 | F: (314) 621-3485

**Andrew G. Jubinsky**\*
andy.jubinsky@figdav.com
**Amber D. Reece**\*
amber.reece@figdav.com
**FIGARI + DAVENPORT, LLP**
901 Main Street, Suite 3400
Dallas, TX 75202
T: (214) 939-2000 | F: (214) 939-2090
*\*Admitted Pro Hac Vice*

**ATTORNEYS FOR DEFENDANT UMR, INC.**

## TABLE OF CONTENTS

### CONTENTS

INTRODUCTION ........................................................................................................................1

ARGUMENT AND AUTHORITIES ........................................................................................4

A.      Legal Standard ................................................................................................................4

B.      The Complaint fails to state a claim for relief under ERISA Section 502(a)(1)(B) ............5

      1. Plaintiff has failed to state a claim under Section 502(a)(1)(B) because the Complaint does not seek to recover benefits, enforce rights, or clarify rights to future benefits under the terms of the SPD. ..............................................................5

      2. Facial feminization surgery is not a medically necessary treatment for gender dysphoria under the terms of the SPD. ....................................................................7

      3. Even if facial feminization surgery could be construed as a medically necessary treatment for gender dysphoria under the SPD (it cannot), coverage would nonetheless be excluded. ......................................................................................10

C.      Plaintiff has not stated a claim for violation of the Parity Act ............................................11

D.      Counts Three and Four of the Complaint are duplicative and should be dismissed ..........14

CONCLUSION .........................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
   821 F.3d 352 (2d Cir. 2016) ............................................................................................. 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................... 4

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................................... 4

*Brown v. Seitz Foods, Inc. Disability Ben. Plan*,
   140 F.3d 1198 (8th Cir. 1998) ........................................................................................... 6

*Doe Run Res. Corp. v. Lexington Ins. Co.*,
   719 F.3d 868 (8th Cir. 2013) ........................................................................................... 10

*Doe v. United Health Grp. Inc.*,
   No. 17CV4160AMDRL, 2018 WL 3998022 (E.D.N.Y. Aug. 20, 2018) ......................... 11

*In re Elec. Data Sys. Corp. "ERISA" Litig.*,
   305 F. Supp. 2d 658 (E.D. Tex. 2004) ............................................................................... 1

*Firestone Tire & Rubber Co. v. Bruch*,
   489 U.S. 101 (1989) ........................................................................................................... 6

*G.F. v. Blue Cross & Blue Shield of Tex.*,
   No. 2:21-CV-4079-MDH, 2021 WL 3557651 (W.D. Mo. Aug. 11, 2021) ..................... 14

*Gorog v. Best Buy Co., Inc.*,
   760 F.3d 787 (8th Cir. 2014) ............................................................................................. 5

*Halbach v. Great-W. Life & Annuity Ins. Co.*,
   561 F.3d 872 (8th Cir. 2009) ............................................................................................. 9

*Hankins v. Standard Ins. Co.*,
   677 F.3d 830 (8th Cir. 2012) ........................................................................................... 10

*Johnson v. Wellmark of S. Dakota, Inc.*,
   441 F. Supp. 3d 780 (D.S.D. 2020) ................................................................................... 6

*Jones v. Aetna Life Ins. Co.*,
   856 F.3d 541 (8th Cir. 2017) ....................................................................................... 5, 14

*LaSalle v. Mercantile Bancorporation, Inc. Long Term Disability Plan*,
   498 F.3d 805 (8th Cir. 2007) ............................................................................................. 6

*Mattes v. ABC Plastics, Inc.*,
    323 F.3d 695 (8th Cir. 2003) ..................................................................................5

*Michael M. v. Nexsen Pruet Grp. Med. & Dental Plan*,
    No. 3:18-cv-873, 2021 WL 1026383 (D.S.C. Mar. 17, 2021)................................11

*N.R. by & through S.R. v. Raytheon Co.*,
    No. CV 20-10153-RGS, 2020 WL 3065415 (D. Mass. June 9, 2020) .............11, 13

*Papasan v. Allain*,
    478 U.S. 265 (1986)..................................................................................................4

*Peter E. v. United HealthCare Servs., Inc.*,
    No. 2:17-CV-00435-DN, 2019 WL 6118422 (D. Utah Nov. 18, 2019)..............3, 12

*Porous Media Corp. v. Pall Corp.*,
    186 F.3d 1077 (8th Cir. 1999) ..................................................................................5

*Portell v. AmeriCold Logistics, LLC*,
    571 F.3d 822 (8th Cir. 2009) ....................................................................................7

*Ross v. Rail Car Am. Grp. Disability Income Plan*,
    285 F.3d 735 (8th Cir. 2002) .................................................................................6, 7

*Varity Corp. v. Howe*,
    516 U.S. 489 (1996)..................................................................................................2

**Statutes**

29 U.S.C. 1132(a)(3)(A)-(B) ............................................................................................3

29 U.S.C. § 1002(1) .........................................................................................................1

29 U.S.C. § 1102(a)(1).....................................................................................................1

29 U.S.C. §§ 1104-05 ......................................................................................................2

29 U.S.C. § 1132(a)(1)(B) ...............................................................................................2

29 U.S.C. § 1132(a)(3)..................................................................................................2, 6

29 U.S.C. § 1185(a)(3)(A)(ii) ..........................................................................................3

**Other Authorities**

Federal Rules of Civil Procedure Rule 12(b)(6) .....................................................1, 4, 5

Defendant UMR, Inc. ("UMR"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, submits this memorandum in support of its Motion to Dismiss ("Motion") Plaintiff's Amended Complaint (the "Complaint") (Dkt. 46), and respectfully states as follows:

## INTRODUCTION

This is a dispute over the denial of a request for preauthorization of coverage under a self-funded group health plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* Plaintiff, Sabrina Duncan ("Plaintiff"), is an employee of Jack Henry & Associates, Inc. ("Jack Henry") and a participant in Jack Henry's self-funded group health plan, The Jack Henry & Associates, Inc. Group Health Benefit Plan ("Plan"), which is governed by ERISA. [Compl. ¶ 6.] The parameters of benefits provided by Plan are delineated by its Summary Plan Description ("SPD").[1] UMR is a third-party claims administrator for the Plan. [Compl. ¶ 13.] Quantum Health, Inc. ("Quantum") (together with Jack Henry and UMR, "Defendants") is a delegee of the Plan that administered the "Care Coordination Process" set out in the SPD. [Compl. ¶ 14.]

Counts One through Four of the Complaint, which are aimed at all of the Defendants including UMR, purport to assert claims under ERISA Section 502(a). Count One of the Complaint is described as a claim under Section 502(a)(1)(B), which allows a participant "to recover benefits

---

[1] The Complaint uses the term "Plan" interchangeably to refer to "The Jack Henry & Associates, Inc. Group Health Benefit Plan" [Compl. ¶ 12] and the Summary Plan Document [*see, e.g.*, Compl. ¶¶ 16-20. The Plan itself is an entity, which is distinct from the written instrument establishing it. *See* 29 U.S.C. § 1002(1) ("The terms 'employee welfare benefit plan' and 'welfare plan' mean any plan, fund or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization…"); 29 U.S.C. § 1102(a)(1) ("Every employee benefit plan shall be established and maintained pursuant to a written instrument."); *see, e.g.*, *In re Elec. Data Sys. Corp. "ERISA" Litig.*, 305 F. Supp. 2d 658, 665 (E.D. Tex. 2004) ("Generally, 'under ERISA, a person or entity may be deemed a fiduciary either by assumption of the fiduciary obligations (the functional or *de facto* method) or by express designation by the ERISA plan documents.'"). A copy of the SPD is attached hereto as Exhibit A.

due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan,"[2] fails to state a cognizable claim for relief.[3] In support of Count One, Plaintiff contends that Defendants misinterpreted the SPD's terms by denying Plaintiff's preauthorization request for facial feminization surgery based on the SPD's exclusion for "Cosmetic Treatments" and utilizing a UnitedHealthcare clinical policy number 2020T0580F for "Gender Dysphoria Treatment," (hereinafter, the "GDT Policy"), a copy of which is attached hereto as Exhibit B, in evaluating Plaintiff's preauthorization request. [Compl. ¶¶ 110-121.] Section 502(a)(1)(B) does not provide a plan participant with a claim for relief based on an alleged misinterpretation of a plan's terms, and, as a result, Plaintiff's allegations are insufficient to state a claim upon which relief may be granted under Section 502(a)(1)(B). Count One of the Complaint should therefore be dismissed.

Count Four of the Complaint (Compl. ¶¶ 134-44) purports to assert a claim against the Defendants under Section 502(a)(3),[4] which permits a plan "participant, beneficiary, or fiduciary (A) to enjoin any act of practice which violates any provision of [ERISA] or the terms of the plan,

---

[2] 29 U.S.C. § 1132(a)(1)(B).

[3] Within the section of the Complaint describing Count One, Plaintiff refers to 29 U.S.C. §§ 1104-05 of ERISA relating to plan fiduciaries' duties and liability for breach of a co-fiduciary and asserts that Defendants "breached their fiduciary duties to Plaintiff by denying her request for precertification of coverage for her prescribed facial feminization surgery." [Compl. ¶¶ 115-118.] Count One of the Complaint, however, is also explicitly described as being brought solely under Section 502(a)(1)(B) and not Section 502(a)(3) of ERISA. [Compl. ¶ 110.] *See Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996) (Section 502(a)(3) of ERISA is a "catchall" provision that allows "appropriate equitable relief" for "any" statutory violation" Section "502 does not elsewhere adequately remedy."). As pleaded, Count One fails to state a claim under Section 502(a)(1)(B) as described herein.

[4] 29 U.S.C. § 1132(a)(3). Paragraph 107 of the Complaint describes Count Two of the Complaint as being asserted under 29 U.S.C. § 1132(a)(1)(B), however, Paragraph 100, which is in the section of the Complaint describing Count Two, asserts that Count Two is asserted under 29 U.S.C. § 1132(a)(3). [Compl. ¶ 135.] Regardless of which section of ERISA that Plaintiff intended to base Count Two, it fails to state a claim upon which relief can be granted as described herein.

or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan." In support of Count Four, Plaintiff argues that the SPD's exclusion of coverage for facial feminization surgery as a Cosmetic Treatment violates the Mental Health Parity and Addiction Equity Act ("Parity Act")[5] "the Plan's Cosmetic Treatment exclusion and Medical Necessity requirement, as applied by Defendants, are also more restrictive with respect to mental health benefits than to medical/surgical benefits." [Compl. ¶¶140.] The Parity Act, which is a 2008 amendment to ERISA, "requires plans to ensure 'treatment limitations applicable to mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan.'" *Peter E. v. United HealthCare Servs., Inc.*, No. 2:17-CV-00435-DN, 2019 WL 6118422, at *2 (D. Utah Nov. 18, 2019) (quoting 29 U.S.C. § 1185(a)(3)(A)(ii)). Taken as a whole, as they must be, the SPD's terms do not impose any limitations or requirements on mental health benefits that are more restrictive than the limitations or requirements applied to medical benefits provided by the Plan. Accordingly, Count Four of the Complaint should be dismissed because it fails to state a claim upon which relief can be granted.

Counts Two and Three of the Complaint, which are both pleaded in the alternative, seek injunctive and equitable relief under Section 502(a)(3)(A)-(B)[6] "only to the extent the Court finds the relief available to Plaintiff under is not adequate to fully remedy her injuries" under Counts One and Four [Compl. ¶¶ 123, 129.] But Counts Two and Three do not describe any *theory of liability* that differs from the theories described in Counts One or Four. Counts One through Four

---

[5] 29 U.S.C. § 1185.

[6] 29 U.S.C. 1132(a)(3)(A)-(B).

are all based on the same proposition that Defendants either misinterpreted or violated the terms of the SPD or ERISA. Counts Two and Three must therefore be dismissed as duplicative.

Thus, Counts One through Four of the Complaint—the only causes of action asserted against UMR—fail to state a claim upon which relief may be granted and should therefore be dismissed under Federal Rule of Civil Procedure 12(b)(6).

## ARGUMENT AND AUTHORITIES

A.  **LEGAL STANDARD**

Under Rule 12(b)(6), the Court may dismiss a pleading for "failure to state a claim upon which relief may be granted." To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Naked assertions will not suffice, and conclusory statements unsupported by factual content are not accepted as true. *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 664. Rather, a claim must contain sufficient factual matter that, if accepted as true, "nudge[s] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S at 570.

A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (*citing Twombly,* 550 U.S. at 556). It must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The Court is not bound to accept as true legal conclusions characterized as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The factual allegations must "raise a right to relief above the speculative level, on the assumption that all allegations are true (even if doubtful in

fact)." *Twombly*, 550 U.S. at 555. But when the allegations are lacking, this basic deficiency should be exposed at the point of minimum expense and time by the parties and the court. *Id.* at 558.

In evaluating a motion to dismiss under Rule 12(b)(6), the Court may consider "materials that are 'necessarily embraced by the pleadings.'" *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). "The contracts upon which a claim rests are evidently embraced by the pleadings." *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 791 (8th Cir. 2014) (quoting *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003)) (internal quotation marks omitted). The Complaint embraces the SPD and the clinical policies that it incorporates, which are described and quoted throughout. Accordingly, the Court may consider the terms of the SPD, a copy of which is attached hereto as Exhibit A, and the policies and guidelines it incorporates, copies of which attached hereto as Exhibits B and C, in evaluating this Motion.

### B. THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF UNDER ERISA SECTION 502(A)(1)(B)

#### 1. Plaintiff has failed to state a claim under Section 502(a)(1)(B) because the Complaint does not seek to recover benefits, enforce rights, or clarify rights to future benefits under the terms of the SPD.

Section 502(a)(1)(B) provides the exclusive avenue for a plan participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Count One of the Complaint, although described as one under Section 502(a)(1)(B), does not state a claim for relief because the factual allegations stated in support do not describe a claim for benefits. *See Jones v. Aetna Life Ins. Co.*, 856 F.3d 541, 545 (8th Cir. 2017). Plaintiff alleges that the Defendants "violated the terms of Plaintiff's Plan by arbitrarily denying her request for precertification of coverage for her prescribed facial feminization surgery to treat her diagnosed gender dysphoria, even though Plaintiff satisfied all prerequisites for coverage under the Plan and

the Plan explicitly covers treatment for gender dysphoria, including gender transition surgery." [Compl. ¶ 112.] Section 502(a)(1)(B) does not provide a remedy for this grievance.

Review of a plan participant's claim for benefits under Section 502(a)(1)(B) is typically based on the administrative record, which contains the information that was before the administrator when it adjudicated the claim. *See LaSalle v. Mercantile Bancorporation, Inc. Long Term Disability Plan*, 498 F.3d 805, 811 (8th Cir. 2007); *see also Johnson v. Wellmark of S. Dakota, Inc.*, 441 F. Supp. 3d 780, 786 (D.S.D. 2020) ("The general rule in ERISA cases is that a court's review is limited to evidence that was before the plan administrator in order to 'ensure expeditious judicial review of ERISA benefit decisions and to keep district courts from becoming substitute plan administrators.'") (quoting *Brown v. Seitz Foods, Inc. Disability Ben. Plan*, 140 F.3d 1198, 1200 (8th Cir. 1998)). Judicial review of a claim adjudication pursuant to a plan that gives discretionary authority to interpret a plan document to a fiduciary is based on an abuse of discretion standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

Count One of the Complaint does not cite to or rely on any information purportedly in the administrative record related to Plaintiff's request for preauthorization of coverage for facial feminization surgery. Nor does it put forth any factual allegation or cognizable argument that the Defendants abused their discretion in concluding that facial feminization surgery is excluded from coverage under the terms of the SPD. Rather, Count One is solely premised on Plaintiff's allegation that Defendants misinterpreted the SPD's terms and by applying the GDT Policy to the SPD's terms. *See Ross v. Rail Car Am. Grp. Disability Income Plan*, 285 F.3d 735, 741 (8th Cir. 2002) (claim seeking to invalidate plan amendments because they violated the plan's amendment procedures could "only be characterized as arising under 29 U.S.C. § 1132(a)(3)" even where the plaintiff "ultimately [sought] a restoration of full benefits").

In *Ross,* the Eighth Circuit explained that a plaintiff who is "seeking to reform the Plan by obtaining a declaration" that sections of the plan are void is not seeking to recover benefits, enforce rights, or clarify rights to future benefits, but is instead seeking to reform the plan, which is not a remedy available under Section 502(a)(1)(B). *Ross*, 285 F.3d at 740. The same conclusion is warranted here because the Complaint seeks only declaratory and injunctive relief related to the interpretation of the SPD's terms and not to recover benefits, enforce rights, or clarify rights under the SPD. Even if Plaintiff had described Count One as a claim under ERISA Section 502(a)(3), the Complaint nonetheless fails to state a claim for relief because the unambiguous terms of the SPD contradict Plaintiff's contentions.

### 2. Facial feminization surgery is not a medically necessary treatment for gender dysphoria under the terms of the SPD.

Plaintiff contends that because the SPD provides coverage for "Gender Transition," which is defined in the SPD as "[t]reatment, drugs, medicines, services, and supplies for, or leading to, *gender transition surgery*,"[7] the Cosmetic Treatment exclusion is inapplicable to her request for preauthorization for *facial feminization surgery*. [Compl. ¶ 113.] Plaintiff's proposed interpretation of the SPD, however, would require the Court to ignore contradictory terms of the SPD, which is inconsistent with the principles of contract interpretation. *See Portell v. AmeriCold Logistics, LLC*, 571 F.3d 822, 824 (8th Cir. 2009) (Court "read[s] the contract as a whole and give[s] terms their 'plain, ordinary and usual meaning'" and "construe[s] each of the terms to avoid rendering the other terms meaningless").

The SPD explains that the Plan provides coverage for specifically delineated Covered Medical Benefits "if services are authorized by a Physician or other Qualified Provider, if

---

[7] Ex. A at 53 (emphasis added).

applicable, and are *necessary* for the treatment of an Illness[8] or Injury, [9] *subject to any limits, maximums, exclusions, or other Plan provisions shown in this SPD*." [Ex. A at 50 (emphasis added).] "Gender Transition" as defined in the SPD is identified as a Covered Medical Benefit. [*Id.* at 53] The SPD also states that the Plan will provide coverage for specifically identified services "authorized by a Physician and deemed to be *Medically Necessary* for the treatment of a Mental Health Disorder." [Ex. A at 78 (emphasis added).] The Plan defines "Medically Necessary/Medical Necessity" as

> health care services provided for the purpose of preventing, evaluating, diagnosing, or treating an Illness, Injury, mental illness, substance use disorder, condition, or disease or its symptoms, that generally meet the following criteria as determined by [the Plan] or [its] designee, within [the Plan's] sole discretion:
>
> - In accordance with Generally Accepted Standards of Medical Practice; and
>
> - Clinically appropriate, in terms of type, frequency, extent, site, and duration, and considered effective for Your Illness, Injury, mental illness, substance use disorder, or disease or its symptoms; and
>
> - Not mainly for Your convenience or that of Your doctor or other health care provider;
>
> - Is the most appropriate, most cost-efficient level of service(s), supply, or drug that can be safely provided to the member and that at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of Your Illness, Injury, disease, or symptoms; and
>
> The fact that a Physician has performed, prescribed, recommended, ordered, or approved a service, treatment plan, supply, medicine, equipment, or facility, or that it is the only available procedure or treatment for a condition, does not, in itself, make the utilization of

---

[8] "Illness means a bodily disorder, disease, physical or mental sickness, functional nervous disorder, pregnancy, or complication of pregnancy.' [Ex. A at 125.]

[9] "Injury means a physical harm or disability to the body that is the result of a specific incident cause by external means." [Ex. A at 125.]

> the service, treatment plan, supply, medicine, equipment, or facility Medically Necessary.

[Ex. A at 126.] The SPD goes on to explain that "Generally Accepted Standards of Medical Practice" as used in the preceding section

> are standards that are based on credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community, relying primarily on controlled clinical trials, or, if not available, observational studies from more than one institution that suggest a causal relationship between the service or treatment and health outcomes.

[*Id.*] The SPD incorporates and relies on the clinical policies developed and maintained by UnitedHealthcare Clinical Services "that describe the Generally Accepted Standards of Medical Practice scientific evidence, prevailing medical standards, and clinical guidelines supporting [the Plan's] determinations regarding specific services," which are available at UnitedHealthcareOnline.com. [Ex. A at 127.] *See Halbach v. Great-W. Life & Annuity Ins. Co.*, 561 F.3d 872, 876 (8th Cir. 2009) ("Basic contract principles instruct that '[w]here a writing refers to another document, that other document, or the portion to which reference is made, becomes constructively a part of the writing, and in that respect the two form a single instrument. The incorporated matter is to be interpreted as part of the writing.'").

The GDT Policy, under the heading "Coverage Rationale," identifies seven "[g]ender reassignment surgical procedures that are medically necessary and covered as a proven benefit" for a "Male-to-Female (MtF)" transition. [Ex. B at 1-2.] Where a plan "covers treatment for gender dysphoria, coverage includes . . . certain surgical treatments" identified in the Coverage Rational section of the GDT Policy. [*Id.*] Facial feminization surgery is *not included* in the "gender reassignment surgical procedures" that are considered "medically necessary and covered as a proven benefit" pursuant to the GDT Policy. The GDT Policy also clarifies that medically necessary surgical procedures for Gender Dysphoria are also described as "sex transformation

surgery, sex change, sex reversal, gender change, transsexual surgery, transgender surgery and sex reassignment." [Ex. B at 8.] In addition, the GDT Policy states that "[c]ertain ancillary procedures," including, among others, "facial bone remodeling for facial feminization," "are considered cosmetic and not medically necessary, when performed as part of gender reassignment." [Ex. B at 2.]

### 3. Even if facial feminization surgery could be construed as a medically necessary treatment for gender dysphoria under the SPD (it cannot), coverage would nonetheless be excluded.

Covered Medical Benefits and Mental Health Benefits provided by the Plan are subject to the same General Exclusions. [Ex. A at 50, 79.] The General Exclusions state that "Cosmetic Treatment,[10] Cosmetic Surgery, or any portion thereof," including any related complications, is excluded from coverage "unless the procedure is otherwise listed as a covered benefit." [Ex. A at 94.] Facial feminization surgery is not identified as a covered benefit in the SPD. Nor can the SPD's provision providing coverage for "Gender Transition" be interpreted to include facial feminization surgery. In fact, the opposite is true: the GDT Policy, which is incorporated into the SPD, makes clear that facial feminization surgery is not covered because it is not a medically necessary surgical treatment for gender dysphoria *and* because it is cosmetic and excluded from coverage. *See Hankins v. Standard Ins. Co.*, 677 F.3d 830, 834 (8th Cir. 2012) (administrator does not abuse its discretion when its interpretation "is consistent with the goals of the Plan," does not render any language in the plan document "meaningless or internally inconsistent," does not conflict with ERISA's substantive or procedural requirements, and is interpreted consistently and does not contradict "the clear language of the Plan"); *see also Doe Run Res. Corp. v. Lexington*

---

[10] "Cosmetic Treatment means medical or surgical procedures that are primarily used to improve, alter, or enhance appearance, whether or not for psychological or emotional reasons." [Ex. A at 121.]

*Ins. Co.*, 719 F.3d 868, 871 (8th Cir. 2013) ("Where insurance policy terms unambiguously apply, including coverage exclusions, they will be enforced as written.").

Taken together, the terms of the SPD and the GDT Policy mandate the conclusion that the denial of Plaintiff's request for preauthorization for facial feminization surgery was consistent with the SPD's terms. Even if Plaintiff had asserted Count One under Section 502(a)(3), Count One would still fail to state a claim upon which relief could be granted, and should therefore be dismissed for this additional reason.

### C. PLAINTIFF HAS NOT STATED A CLAIM FOR VIOLATION OF THE PARITY ACT

Count Four of the Complaint asserts a claim under Section 502(a)(3) of ERISA based on an alleged violation of the Mental Health Parity and Addiction Equity Act ("Parity Act"), 29 U.S.C. § 1185. "Under the Federal Parity Act, 'if an insurer 'provides both medical and surgical benefits and mental health or substance use disorder benefits,' the insurer must ensure that both 'the financial requirements' and 'the treatment limitations' applicable to mental health and substance use disorder benefits 'are no more restrictive' than the predominant financial requirements and treatment limitations that apply to medical and surgical benefits.'" *Doe v. United Health Grp. Inc.*, No. 17CV4160AMDRL, 2018 WL 3998022, at *5 (E.D.N.Y. Aug. 20, 2018) (quoting *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 356 (2d Cir. 2016)).

Challenges under the Parity Act can be facial or as-applied. *Michael M. v. Nexsen Pruet Grp. Med. & Dental Plan*, No. 3:18-cv-873, 2021 WL 1026383, at *10 (D.S.C. Mar. 17, 2021). "[F]or a facial Parity Act claim, Plaintiffs must plausibly allege that the Plan imposes 'separate treatment limitations' only on mental health/substance abuse services or promulgates 'more restrictive treatment limitations' for mental health/substance abuse care than the Plan uses for the analogous covered medical/surgical services." *N.R. by & through S.R. v. Raytheon Co.*, No. CV

20-10153-RGS, 2020 WL 3065415, at *6 (D. Mass. June 9, 2020) (internal citations omitted). "To sufficiently plead an as-applied Parity Act violation, the plaintiff must allege 'that a defendant differentially applied a facially neutral plan term.'" *Peter E. v. United HealthCare Servs., Inc.*, No. 2:17-CV-00435-DN, 2019 WL 6118422, at *2 (D. Utah Nov. 18, 2019).

Plaintiff asserts a facial challenge under the Parity Act by alleging that the SPD's Cosmetic Treatment exclusion only applies to "medical or surgical procedures that are primarily used to improve, alter, or enhance appearance . . . only when they are prescribed solely for psychological reasons, rather than physical ones." [Compl. ¶ 138.] As an initial matter, the SPD defines excluded Cosmetic Treatment as "medical or surgical procedures that are primarily used to improve, alter, or enhance appearance, *whether or not for psychological or emotional reasons*." [Ex. A at 121 (emphasis added).] Plaintiff's allegation that Cosmetic Treatments are excluded only *when they are for psychological or emotional reasons* is a brazen mischaracterization of the SPD's terms.

In addition, "Reconstructive Surgery" is defined in the SPD as "surgical procedures performed on abnormal structures of the body caused by congenital illness or anomaly, Accident, or Illness." [Ex. A at 129.] The definition of "Reconstructive Surgery" goes on to clarify that "the fact that physical appearance may change or improve as a result of Reconstructive Surgery does not classify surgery Cosmetic Treatment when a physical impairment exists and the surgery restores or improves function." [*Id.*] Plaintiff conveniently omits to point out that the SPD's General Exclusions state that "Reconstructive Surgery when performed *only to achieve a normal or nearly normal appearance*, and not to correct an underlying medical condition or impairment, as determined by the Plan, unless covered elsewhere in this SPD" is not covered. [Ex. A at 97.] Reading the SPD as a whole, it is clear that both "Cosmetic Treatment" that is "*primarily used to improve alter, or enhance appearance*" (Ex. A at 121), and "Reconstructive Surgery" that is

"performed *only to achieve a normal or nearly normal appearance*" (Ex. A at 97) are both excluded from coverage.[11] (emphasis added).

Further, the SPD's definition of "Reconstructive Surgery" includes "surgical procedures performed on abnormal structures of the body caused by . . . Illness," which "means a bodily disorder, disease, *physical or mental sickness*, functional nervous disorder, pregnancy, or complication of pregnancy." [Ex. A at 125 (emphasis added).] The SPD does not impose any greater restrictions, requirements, or limitations on coverage related to or treatment for abnormalities caused by a mental sickness—it consistently excludes coverage for procedures that are solely aimed at improving physical appearance or achieving "a normal appearance" regardless of whether the treatment is sought for psychological or emotional reasons or due to a mental sickness. The SPD is in accord with the requirements of the Parity Act. *See N.R. by & through S.R. v. Raytheon Co.*, No. CV 20-10153-RGS, 2020 WL 3065415, at *10 (D. Mass. June 9, 2020) (plan that included "simultaneous presentation of generically applicable habilitative services and non-restorative speech therapy exclusions" did not facially exclude "benefits for non-restorative speech therapy only for mental health conditions"). All told, Plaintiff has not stated a claim upon which relief may be granted for violation of the Parity Act.

---

[11] Indeed, the consistency of these terms becomes more apparent when considered with UnitedHealthcare's Coverage Determination Guideline ("CDG") Number CDG.007.20 related to "Cosmetic and Reconstructive Procedures," which is incorporated by reference into the GDT Policy. [Ex. B at 8.]. The CDG, a copy of which is attached hereto as Exhibit C, states that "[p]rocedures that correct an anatomical Congenital Anomaly without improving or restoring physiologic function are considered Cosmetic Procedures. The fact that a Covered Person may suffer psychological consequences or socially avoidant behavior as a result of an Injury, Sickness or Congenital Anomaly does not classify surgery (or other procedures done to relieve such consequences or behavior) as a Reconstructive Procedure." [Ex. C at 2.]

### D. COUNTS TWO AND THREE OF THE COMPLAINT ARE DUPLICATIVE AND SHOULD BE DISMISSED

Although the Eighth Circuit has concluded that a plan beneficiary can plead alternative claims "so long as two claims 'assert different theories of liability,'" Counts Three and Four of the Complaint assert the exact same theories of liability as Counts One and Four. *Jones v. Aetna Life Ins. Co.*, 856 F.3d 541, 547 (8th Cir. 2017). Indeed, Counts One through Four of the Complaint are all premised on Plaintiff's contention that Defendants violated the terms of the SPD and ERISA. *Cf. Jones*, 856 F.3d at 547 (claims asserting denial of benefits and that an administrator used a claims-handling process that breached its fiduciary duties asserted different theories of liability); *see also G.F. v. Blue Cross & Blue Shield of Tex.*, No. 2:21-CV-4079-MDH, 2021 WL 3557651, at *2 (W.D. Mo. Aug. 11, 2021) ("In order to survive a motion to dismiss, claims seeking ERISA plan benefits and equitable relief under ERISA must plead different theories of liability."). As a result, Counts Two and Three of the Complaint should be dismissed as well.

### CONCLUSION

UMR respectfully requests that the Court grant this Motion and dismiss Counts One through Four of the Complaint with respect to UMR in its entirety with prejudice and award UMR such further relief to which it is entitled.

Dated: January 25, 2022                         Respectfully submitted,

By: */s/ Ann E. Buckley*
    **Ann E. Buckley**, #26970
    abuckley@buckleylawllc.comm
    **BUCKLEY & BUCKLEY, L.L.C.**
    800 Market Street, Suite 2900
    St. Louis, MO 63101
    T: (314) 621-3434 | F: (314) 621-3485

    **Andrew G. Jubinsky**\*
    andy.jubinsky@figdav.com
    **Amber D. Reece**\*
    amber.reece@figdav.com
    **FIGARI + DAVENPORT, LLP**
    901 Main Street, Suite 3400
    Dallas, TX 75202
    T: (214) 939-2000 | F: (214) 939-2090
    *\*Admitted Pro Hac Vice*

    **ATTORNEYS FOR DEFENDANT UMR, INC.**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been served on the parties listed below via CM/ECF on January 25, 2022.

**ACLU OF MISSOURI FOUNDATION**
Anthony E. Rothert, #44827
arothert@aclu-mo.org
Jessie Steffan, #64861
jsteffan@aclu-mo.org
Molly E. Carney, #70570
mcamey@aclu-mo.org
Emily Lazaroff, #73811
elazaroff@aclu-mo.org
Gillian R. Wilcox, #61278
gwilcox@aclu-mo.org

**ZUCKERMAN SPAEDER LLP**
Caroline E. Reynolds - PHV
creynolds@zuckerman.com
Leila Bijan - PHV
lbijan@zuckerman.com

**HORN, AYLWARD, & BANDY LLC**
Danne W. Webb
Missouri Bar No. 39384
dwebb@hab-law.com
Ande S. McMurtry
Missouri Bar No. 62495
amcmurtry@hab-law.com

**GREENSFELDER, HEMKER & GALE, PC**
Heather Mehta
Missouri Bar No. 64026
hmm@greensfelder.com
Lauren Abbott Darning
Missouri Bar No. 66472
ldaming@greensfelder.com

*/s/ Ann E. Buckley*
Ann E. Buckley