UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| SABRINA BRIONY DUNCAN, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 6:21-cv-03280-RK |
| JACK HENRY & ASSOCIATES, INC.; THE JACK HENRY & ASSOCIATES, INC. GROUP HEALTH BENEFIT PLAN; UMR, INC.; and QUANTUM HEALTH, INC., | ) |
| Defendants. | ) |

**JACK HENRY & ASSOCIATES, INC.'S AND
THE JACK HENRY & ASSOCIATES, INC. GROUP HEALTH BENEFIT PLAN'S
SUGGESTIONS IN SUPPORT OF
<u>THEIR RENEWED PARTIAL MOTION TO DISMISS</u>**

**Table of Contents**

I. Introduction ........................................................................................................... 1

II. Standard of review ................................................................................................ 2

III. Argument .............................................................................................................. 2

    A. Count One should be dismissed for failure to state a claim because it seeks relief for breach of fiduciary duty, which is not available under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). ............................................................................... 2

    B. Count Two does not present an alternative theory of liability and should be dismissed. ........................................................................................................... 4

    C. Count Three should be dismissed because it is duplicative of Count One. ............. 5

    D. Count Four should be dismissed because it fails to state a claim for a facial violation of the Parity Act. ................................................................................. 6

    E. Count Five should be dismissed because Jack Henry had no affirmative duty to disclose the nonquantitative treatment limitations comparative analysis to Plaintiff. ......... 9

    F. Count Seven should be dismissed because claims based upon gender dysphoria are not within the scope of the ADA. ................................................................ 11

    G. Count Eight's claim of alleged disability discrimination under the MHRA is preempted by ERISA and should be dismissed on that basis. .......................... 13

IV. Conclusion .......................................................................................................... 15

**Table of Authorities**

**Cases**                                                                                              **Page(s)**

*Auer v. Robbins,* 519 U.S. 452 (1997) ............................................................................... 11

*Bennett v. Hallmark Cards Inc.*, 92-1073-CV-W-6, 1993 WL 327842 (W.D. Mo. Aug. 17, 1993) ............................................................................................................................... 14

*Brown v. Am. Life Holdings, Inc.,* 190 F.3d 856 (8th Cir. 1999) ...................................... 10

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) ........... 11

*Cobb v. Stringer*, 850 F.2d 356 (8th Cir. 1988) ................................................................. 13

*Collins v. 3M Co.*, No. CV 17-529(DSD/DTS), 2017 WL 1755953 (D. Minn. May 4, 2017) ...... 6

*Delcastillo v. Odyssey Res. Mgmt., Inc.*, 431 F.3d 1124 (8th Cir. 2005) ........................... 4

*Doe v. Northrop Grumman Sys. Corp.*, 418 F. Supp. 3d 921 (N.D. Ala. 2019) ............... 11

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989) ............................................ 3

*G.F. v. Blue Cross & Blue Shield of Texas,* No. 2:21-CV-4079-MDH, 2021 WL 3557651 (W.D. Mo. Aug. 11, 2021) ............................................................................................. 5

*Hammonds v. Union Elec. Co.*, 4:11CV1476 CDP, 2011 WL 6010919 (E.D. Mo. Dec. 2, 2011) ............................................................................................................................ 13

*Hayes v. Twin City Carpenters,* No. 17CV05267ECTBRT, 2019 WL 3017747 (D. Minn. July 10, 2019) ......................................................................................................................... 5

*Jones v. Aetna Life Ins. Co.*, 856 F.3d 541 (8th Cir. 2017) .......................................... 3, 4

*Jones v. Aetna Life Ins. Co.*, 943 F.3d 1167 (8th Cir. 2019) ............................................. 5

*Julie L. v. Excellus Health Plan, Inc.*, 447 F. Supp. 3d 38, 54 (W.D.N.Y. 2020) ............... 7

*Kaprielian v. Stringer*, 4:15CV1598 CEJ, 2016 WL 1586488 (E.D. Mo. Apr. 20, 2016) ........... 12

*LaSalle v. Mercantile Bancorporation, Inc. Long Term Disability Plan*, 498 F.3d 805 (8th Cir. 2007) .................................................................................................................... 3

*Lott v. Maplewood Richmond Heights Sch. Dist.*, 4:19 CV 53 CDP, 2019 WL 2450932 (E.D. Mo. June 12, 2019 ................................................................................................... 12

*Michael M. v. Nexsen Pruet Grp. Med. & Dental Plan,* No. 3:18-CV-00873, 2021 WL 1026383 (D.S.C. Mar. 17, 2021) ............................................................................. 6, 7, 9

*Michaels v. Akal Sec., Inc.*, 09-CV-01300-ZLW-CBS, 2010 WL 2573988 (D. Colo. June 24, 2010) ................................................................................................................................. 12

*Moore v. Apple Cent., LLC*, 893 F.3d 573 (8th Cir. 2018) ............................................................ 3

*Mueller v. SPX Corp.*, No. CIV. 12-1121 RHK/AJB, 2013 WL 656619 (D. Minn. Feb. 22, 2013) ................................................................................................................................................ 11

*N.R. by & through S.R. v. Raytheon Co.*, No. CV 20-10153-RGS, 2020 WL 3065415 (D. Mass. June 9, 2020) ......................................................................................................................... 7, 9

*Northshore Min. Co. v. Sec'y of Lab.*, 709 F.3d 706 (8th Cir. 2013) ........................................... 11

*Parisi v. Boeing Co.*, 400 F.3d 583 (8th Cir. 2005) ..................................................................... 13

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987) ...................................................................... 3

*Ross v. Rail Car Am. Grp. Disability Income Plan,* 285 F.3d 735 (8th Cir. 2002) .................... 3, 4

*Schmedding v. Tnemec Co., Inc.*, 187 F.3d 862 (8th Cir. 1999) .................................................... 2

*Shafer v. Zimmerman Transfer, Inc.*, No. 1:20-CV-00023, 2021 WL 1851032 (S.D. Iowa May 5, 2021) ........................................................................................................................................ 6

*Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1987) ...................................................................... 13

*Shelton v. ContiGroup Cos., Inc.*, 285 F.3d 640 (8th Cir. 2002) ................................................... 3

*Silva v. Metro. Life Ins. Co.*, 762 F.3d 711 (8th Cir. 2014) ........................................................... 4

*Spizman v. BCBSM, Inc.*, No. 14-CV-3568MJD, 2015 WL 4569249 (D. Minn. July 27, 2015) . 10

*U.S. ex rel. Kraxberger v. Kansas City Power & Light Co.*, 756 F.3d 1075 (8th Cir. 2014) ... 1, 12

*Williams v. Cigna Health & Life Ins. Co.*, No. 4:21-CV-00324-SRC, 2021 WL 5415051 (E.D. Mo. Nov. 19, 2021) .................................................................................................................... 5

*Williams v. Kincaid*, 1:20-CV-1397, 2021 WL 2324162 (E.D. Va. June 7, 2021) ...................... 12

**Statutes**

29 U.S.C § 1132(c) ....................................................................................................................... 14

29 U.S.C. § 1024(b)(4) ..................................................................................................... 12, 13, 14

29 U.S.C. § 1132(a)(1)(B) ..................................................................................................... passim

29 U.S.C. § 1132(a)(3) .......................................................................................................... passim

29 U.S.C. § 1144 ............................................................................................................. 18, 19

29 U.S.C. § 1185a ............................................................................................................ 8, 12

42 U.S.C. § 12112 .................................................................................................................. 15

42 U.S.C. § 12211 ............................................................................................................ 15, 16

Mo. Rev. Stat. § 213.010.5 ................................................................................................... 19

**Rules**
Fed. R. Civ. P. 12 ................................................................................................................ 2, 20

**Regulations**
29 C.F.R. § 1630.3 ............................................................................................................ 15, 16

29 C.F.R. § 2590.712 ............................................................................................................... 8

I. **Introduction**

The Amended Complaint does not cure the defects identified in the Motion to Dismiss filed by Jack Henry & Associates, Inc. (Jack Henry) and the Jack Henry & Associates, Inc. Group Health Benefit Plan (Plan), who now renew their Motion to Dismiss for similar reasons.

Plaintiff Sabrina (Bri) Duncan (Plaintiff) is a Plan participant and an employee of Jack Henry, the Plan Sponsor and Plan Administrator of the Plan. (FAC ¶¶ 11, 13, 17). She requested precertification for plastic surgery—facial feminization surgery (FFS)—to treat her gender dysphoria. (FAC ¶ 76). Quantum Health, Inc. (Quantum), which provides care coordination services and reviews out-of-network claims for the Plan, determined that the Plan would not cover FFS because it is cosmetic and not medically necessary. (FAC ¶¶ 20, 78). Quantum denied the request for precertification, a decision that was upheld in two appeals. (FAC ¶¶ 78, 82, 84).

Plaintiff then filed this lawsuit against Jack Henry, the Plan, Quantum, and UMR, Inc. (UMR), a third-party administrator of the Plan (collectively, Defendants). All of the eight counts in Plaintiff's Amended Complaint stem from one action: the denial of precertification of surgical benefits under the Plan, a self-funded medical plan subject to the Employee Retirement Income Security Act of 1974 (ERISA).[1] Plaintiff continues to muddle her claim for benefits under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), by infusing allegations of breach of fiduciary duty. And she brings three other counts (Counts 2-4) under ERISA based on the same allegedly wrongful act—the denial of benefits. She then repackages the same claims as claims of alleged discrimination in Counts 6-8. Most of her claims are duplicative or insufficiently pled and should be dismissed.

---

[1] Plaintiff failed to attach a copy of the Plan to her Complaint. It is attached as **Exhibit 1**. The Plan is "incorporated by reference or integral to the claim" and, thus, can be considered on a motion to dismiss. *U.S. ex rel. Kraxberger v. Kansas City Power & Light Co.*, 756 F.3d 1075, 1083 (8th Cir. 2014).

What Plaintiff truly seeks in her Complaint is coverage for FFS under the terms of the Plan. But the Plan excludes Cosmetic Treatments regardless of the reason for seeking treatment.

## II. Standard of review

Rule 12(b)(6) provides that a party may raise by motion the affirmative defense of failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss, the court must view the allegations in the complaint in the light most favorable to the plaintiff. *Schmedding v. Tnemec Co., Inc.*, 187 F.3d 862, 864 (8th Cir. 1999). A motion to dismiss should be granted when the plaintiff can prove no set of facts that entitle him to relief. *Id*. Moreover, a motion to dismiss should be granted when a plaintiff includes "allegations that show on the face of the complaint that there is some insuperable bar to relief." *Id*.

## III. Argument

**A.    Count One should be dismissed for failure to state a claim because it seeks relief for breach of fiduciary duty, which is not available under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).**

Plaintiff has attempted to cure the defects in Count One of her original Complaint, but it still impermissibly seeks relief for a breach of ERISA fiduciary duties. Plaintiff brings Count One under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). As Plaintiff alleges, § 1132(a)(1)(B) allows participants to enforce their rights under the terms of the Plan or clarify their rights to future benefits. (FAC ¶ 111). Although Plaintiff has added four paragraphs explaining why she believes her claim was wrongly denied, the majority of the allegations in Count One are that Defendants violated the terms of the Plan and breached their fiduciary duties. (FAC ¶¶ 115-19).

ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), provides remedies for any act "which violates any provision of this subchapter [*e.g.*, fiduciary duties] or the terms of the plan." The majority of the allegations in Count One are a § 1132(a)(3) claim but mischaracterized as a claim

2

for benefits. Therefore, these allegations fail to state a claim under § 1132(a)(1)(B) and should be dismissed.

"[T]he detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). The Eighth Circuit views individual plaintiffs as having two separate causes of action: one for benefits under § 1132(a)(1)(B) and one for breach under § 1132(a)(3). *Jones v. Aetna Life Ins. Co.*, 856 F.3d 541, 545 (8th Cir. 2017). Plaintiff has muddied these waters by attempting to bring a breach of fiduciary duty claim under § 1132(a)(1)(B).

In typical § 1132(a)(1)(B) claims, the court reviews the administrative record to determine whether the plaintiff is entitled to benefits under the terms of the plan. *See LaSalle v. Mercantile Bancorporation, Inc. Long Term Disability Plan*, 498 F.3d 805, 811 (8th Cir. 2007). If the plan gives discretionary authority to the fiduciary to interpret the plan and decide eligibility for benefits, the review is for abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If a district court determines that a plan administrator abused its discretion, the appropriate remedy is often remanding the case to the plan administrator. *See Shelton v. ContiGroup Cos., Inc.*, 285 F.3d 640, 644 (8th Cir. 2002).

Section 1132(a)(3), in contrast, "authorizes a participant to bring an action to enjoin any act which violates either a provision of ERISA Title I … or the terms of the plan . . ." *Ross v. Rail Car Am. Grp. Disability Income Plan*, 285 F.3d 735, 741 (8th Cir. 2002); *see also Moore v. Apple Cent., LLC*, 893 F.3d 573, 577 (8th Cir. 2018). The Eighth Circuit explained the distinction between § 1132(a)(1)(B) and (a)(3) in *Ross*:

> Although his ultimate goal is to continue receiving disability income benefits from Canada Life, section 502(a)(1)(B) authorizes a participant to bring an action to

3

> recover benefits, enforce rights, or clarify rights to future benefits *under the terms of the plan.* Ross is not seeking to obtain benefits under the terms of the Plan. Rather, he is seeking to reform the Plan by obtaining a declaration that the purported 1990 and 1991 amendments are void. Section 502(a)(1)(B) does not authorize such a claim.

*Ross*, 285 F.3d at 740 (emphasis original).

In Count One, Plaintiff alleges Defendants breached their ERISA fiduciary duties and violated the terms of the Plan. This is not a theory of liability entitling her to relief under § 1132(a)(1)(B); it is a § 1132(a)(3) claim. *See Delcastillo v. Odyssey Res. Mgmt., Inc.*, 431 F.3d 1124, 1130-31 (8th Cir. 2005). She wants to reform the Plan, not enforce its terms. Plaintiff wants to have FFS covered as gender transition surgery even though the terms of the Plan exclude FFS as a Cosmetic Treatment. Thus, Count One improperly pleads a breach of fiduciary duty claim under § 1132(a)(1)(B) and should be dismissed for failure to state a claim.

**B.     Count Two does not present an alternative theory of liability and should be dismissed.**

Count Two should be dismissed because it is a repackaged claim for benefits. In the Eighth Circuit, a plan beneficiary can plead alternative claims "so long as two claims 'assert different theories of liability.'" *Jones*, 856 F.3d at 547 quoting *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 728 & n.12 (8th Cir. 2014). For example, a participant can allege that she is entitled to benefits under the terms of the Plan and, in the alternative, allege defendants' breach of fiduciary duty caused her to not be entitled to benefits under the terms of the plan. *See Jones*, 856 F.3d at 547. That is not what Plaintiff has alleged here.

Here, Count One alleges that Defendants violated the terms of the Plan by denying her request for precertification for surgery because it was Cosmetic and seeks a clarification of her rights to future benefits pursuant to § 1132(a)(1)(B). In Count Two, Plaintiff makes the exact same allegations and asserts the exact same theory of liability. (FAC ¶ 125) ("Defendants violated Plaintiff's Plan by denying Plaintiff's request for coverage pursuant to the Plan's Cosmetic

Treatment exclusion . . .").  But she brings this claim under § 1132(a)(3), seeking "to enjoin Defendants' misinterpretation" of the Plan. (FAC ¶ 127). Count Two—by its own terms—seeks the Court's review of Defendants' interpretation of the Plan. Whether defendants properly interpreted the plan is the basis for almost every § 1132(a)(1)(B) claim filed in any court and, indeed, is what Plaintiff seeks the Court to review in Count One. "This approach merely re-litigates" Defendants' "determination that she was not" entitled to benefits. *Jones v. Aetna Life Ins. Co.*, 943 F.3d 1167, 1169 (8th Cir. 2019). Plaintiff has not pled a valid, alternative theory under § 1132(a)(3). Instead, Count Two "presents a classic claim for plan benefits masquerading as" a § 1132(a)(3) claim. *Williams v. Cigna Health & Life Ins. Co.*, No. 4:21-CV-00324-SRC, 2021 WL 5415051, at *3 (E.D. Mo. Nov. 19, 2021). Count two should be dismissed as duplicative. *See Hayes v. Twin City Carpenters*, No. 17CV05267ECTBRT, 2019 WL 3017747, at *13 (D. Minn. July 10, 2019) (dismissing claim when it was based on same "facts and theories" as other ERISA claim).

**C.     Count Three should be dismissed because it is duplicative of Count One.**

Count Three should be dismissed because it is duplicative of Count One. *See G.F. v. Blue Cross & Blue Shield of Texas*, No. 2:21-CV-4079-MDH, 2021 WL 3557651, at *2 (W.D. Mo. Aug. 11, 2021). Counts One and Three do not present different theories of liability. Count One alleges Defendants violated the Plan terms and breached their ERISA fiduciary duties by denying her request for precertification. Count Three alleges Defendants breached their fiduciary duties and violated the terms of the Plan by denying her request for precertification "[a]s alleged above." (FAC ¶ 133). The only distinction between Court One and Count Three is that Count One is brought under § 1132(a)(1)(B) and Count Three under § 1132(a)(3). But Plaintiff cannot use § 1132(a)(3) to get a second review of her benefit claim.

5

Case 6:21-cv-03280-RK    Document 55    Filed 01/25/22    Page 10 of 20

Plaintiff does not articulate a distinct reason why Defendants breached their fiduciary duties; the alleged "breach" is the denial of her claim. "Defendants breached those fiduciary duties . . . by denying her request for precertification . . . based on a misreading of the Plan's plain terms and application of clinical coverage criteria that were incompatible with the applicable plan terms." (FAC ¶ 132). Under Eighth Circuit precedent, plaintiffs cannot assert the same theory of liability based on the same facts under both § 1132(a)(1)(B) and § 1132(a)(3). *See Shafer v. Zimmerman Transfer, Inc.*, No. 1:20-CV-00023, 2021 WL 1851032, at *3 (S.D. Iowa May 5, 2021) (dismissing as duplicative plaintiff's breach of fiduciary duty claim); *Collins v. 3M Co.*, No. CV 17-529(DSD/DTS), 2017 WL 1755953, at *2 (D. Minn. May 4, 2017) (same).

**D.     Count Four should be dismissed because it fails to state a claim for a facial violation of the Parity Act.**

The Parity Act requires that a plan's treatment limitations applied to mental health benefits be "no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan." 29 U.S.C. § 1185a(a)(3)(A)(ii). Treatment limitations under the Parity Act can be quantitative or nonquantitative. 29 C.F.R. § 2590.712(a). "Quantitative treatment limitations are expressed numerically (such as fifty outpatient visits per year), while nonquantitative treatment limitations otherwise limit the scope or duration of benefits for treatment under a plan or coverage." *Michael M. v. Nexsen Pruet Grp. Med. & Dental Plan*, No. 3:18-CV-00873, 2021 WL 1026383, at *10 (D.S.C. Mar. 17, 2021). Plaintiff has alleged a nonquantitative treatment limitation. (FAC ¶ 137).

To plead a plausible Parity Act violation, Plaintiff must allege "(1) the insurance plan is of the type covered by the Parity Act; (2) the insurance plan provides both medical benefits and mental-health benefits; (3) the plan has a treatment limitation—either quantitative or nonquantitative—for one of those benefits that is more restrictive for mental-health treatment than

6

it is for medical treatment; and (4) the mental-health treatment is in the same classification as the medical treatment to which it is being compared." *Julie L. v. Excellus Health Plan, Inc.*, 447 F. Supp. 3d 38, 54 (W.D.N.Y. 2020) (citation omitted).

Courts view allegations of Parity Act violations as either facial or as-applied challenges. *Nexsen Pruet Grp. Med. & Dental Plan*, 2021 WL 1026383, at *10. "[F]or a facial Parity Act claim, Plaintiffs must plausibly allege that the Plan imposes 'separate treatment limitations' only on mental health/substance abuse services or promulgates 'more restrictive treatment limitations' for mental health/substance abuse care than the Plan uses for the analogous covered medical/surgical services." *N.R. by & through S.R. v. Raytheon Co.*, No. CV 20-10153-RGS, 2020 WL 3065415, at *6 (D. Mass. June 9, 2020) (citations omitted).

Here, Plaintiff has failed to plausibly allege that the Plan imposes a nonquantitative treatment limitation only on surgeries that treat mental health conditions. Plaintiff's facial challenge is belied by the terms of the Plan. Plaintiff alleges that the Plan violates the Parity Act because it excludes Cosmetic Treatments "*except* when a physical impairment exists and the surgery restores or improves function." (FAC ¶ 138) (emphasis original). Her argument misrepresents the terms of the Plan. Although she claims to be quoting the "Cosmetic Treatment" definition, this representation is disingenuous. The language she quotes actually comes from the "Reconstructive Surgery" definition. Accordingly, Plaintiff's claims fail for at least two separate reasons.

First, the Plan excludes Cosmetic *and* Reconstructive Surgery; both are listed under General Exclusions. The Plan excludes "**Cosmetic Treatment**, **Cosmetic Surgery,** or any portion thereof, unless the procedure is otherwise listed as a covered benefit" and also excludes "**Reconstructive Surgery** when performed only to achieve a normal or nearly normal appearance,

and not to correct an underlying medical condition or impairment, as determined by the Plan, unless covered elsewhere in this SPD." (**Exhibit 1**, Plan, "General Exclusions," p. 94, 97) (emphasis original). Therefore, under the plain terms of the Plan, Cosmetic and Reconstructive surgeries are excluded unless the procedure is explicitly included as a covered benefit elsewhere in the Plan. There is nothing in the General Exclusions section that states, or even implies, that a surgery would be excluded solely because it is a mental health treatment.

Second, the definitions of each term further illustrate that there is *not* a categorical exclusion for mental health treatments. The Plan states, "**Cosmetic Treatment** means medical or surgical procedures that are primarily used to improve, alter, or enhance appearance, whether or not for psychological or emotional reasons." (**Exhibit 1**, Plan, "Glossary of Terms," p. 121). This language is the opposite of a categorical exclusion for mental health treatment. (*Contra* FAC ¶ 52). Plaintiff's argument omits the key language, "whether or not," which means regardless. Thus, *all* Cosmetic Treatments are excluded *regardless* of the participant's reason for requesting coverage.

Similarly, the Plan makes clear that a surgery is not considered Reconstructive Surgery based solely on whether it treats a physical or mental condition. The Plan states, "**Reconstructive Surgery** means surgical procedures performed on abnormal structures of the body caused by congenital Illness or anomaly, Accident, or Illness. The fact that physical appearance may change or improve as a result of Reconstructive Surgery does not classify surgery as Cosmetic Treatment when a physical impairment exists and the surgery restores or improves function." (**Exhibit 1**, Plan, "Glossary of Terms," p. 129). Critical to a complete understanding of the definition of Reconstructive Surgery is the definition of Illness, which is "a bodily disorder, disease, physical or *mental sickness* . . ." (**Exhibit 1**, Plan, "Glossary of Terms," p. 125) (emphasis added). Therefore, Reconstructive Surgery to treat "mental sickness" can be a covered service if listed

8
Case 6:21-cv-03280-RK   Document 55   Filed 01/25/22   Page 13 of 20

elsewhere in the SPD. Plaintiff's reliance on the second sentence in the definition misrepresents the Plan's meaning. The first sentence states what Reconstructive Surgery "means." The second sentence only clarifies that Reconstructive Surgery can have cosmetic benefits without being deemed an excluded Cosmetic Treatment. Therefore, on its face, the Plan does not violate the Parity Act. *See Nexsen Pruet Grp. Med. & Dental Plan*, 2021 WL 1026383, at *12.

The District of Massachusetts recently considered a similar claim. The plaintiff alleged a violation of the Parity Act because the plan excluded non-restorative speech therapy and habilitative services. This resulted in a denial of a claim for speech therapy to treat a child with autism. *Raytheon Co.*, 2020 WL 3065415, at *1. The court determined that the exclusions were not specific to mental health treatments and, thus, did not violate the Parity Act. "Neither the Plan's non-restorative speech therapy exclusion nor the habilitative services exclusion purports on its face to address only mental health benefits." *Id.* at 10. The same is true here. The Plan excludes Cosmetic Surgery. Nothing about this exclusion is limited to mental health benefits.

**E.      Count Five should be dismissed because Jack Henry had no affirmative duty to disclose the nonquantitative treatment limitations comparative analysis to Plaintiff.**

The Consolidated Appropriations Act of 2021 (CAA) does not require plan sponsors to disclose their nonquantitative treatment limitations comparative analysis to participants. (*Contra* FAC ¶¶ 30, 90). Plans that impose nonquantitative treatment limitations on mental health benefits must perform and document a comparative analysis of the design and application of nonquantative treatment limitations. 29 U.S.C. § 1185a(a)(8)(A). This analysis must be made "available to the Secretary [of Labor], upon request." *Id.* The statute imposes no duty on plans, insurers, or plan administrators to disclose the analysis to plan participants. Congress could have written such a requirement but did not.

The alleged requirement to disclose the comparative analysis to participants comes from informal guidance. The Department of Labor, Internal Revenue Service, and U.S. Department of Health and Human Services released FAQs on April 1, 2021, regarding the CAA.[2] In FAQ 7, the departments opine that based on "previous guidance" (also in the form of FAQs), they believe that participants have a right to receive copies of the comparative analysis. The departments interpret ERISA Section 104(b)(4), 29 U.S.C. § 1024(b)(4), which requires plan administrators to provide participants with any "instrument under which the plan is operated or established," as requiring disclosure of the comparative analysis.

The departments' interpretation is inconsistent with the plain language and contrary to Eighth Circuit case law, which has held that § 1024(b)(4) should be interpreted narrowly to include only formal instruments that "govern the plan, rather than those which simply evidence its operation." *Brown v. Am. Life Holdings, Inc.*, 190 F.3d 856, 861 (8th Cir. 1999). The Court based its reasoning on the ordinary meaning of the statute. "The ordinary meaning of the word 'instrument' is '[a] formal or legal document in writing, such as a contract, deed, will, bond, or lease ... or [a] writing which gives formal expression to a legal act or agreement, for the purpose of creating, securing, modifying, or terminating a right.'" *Id.* citing BLACK'S LAW DICTIONARY 801 (6th ed.1990).

The comparative analysis does not fall within the scope of § 1024(b)(4). It is not an "instrument" and does not govern the Plan; it is simply an analysis of the Plan's operations. District courts within the Eighth Circuit have consistently applied the Eighth Circuit's narrow interpretation to dismiss statutory penalty claims regarding documents that are beyond the scope of § 1024(b)(4). *See, e.g., Spizman v. BCBSM, Inc.*, No. 14-CV-3568MJD, 2015 WL 4569249, at

---

[2] https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/faqs/aca-part-45.pdf (last visited January 3, 2022).

*10 (D. Minn. July 27, 2015), *aff'd*, 855 F.3d 924 (8th Cir. 2017) (dismissing claim for penalties for failure to provide documents because the requested documents were not "formal documents" that "establish or govern the Plan"); *Mueller v. SPX Corp.*, No. CIV. 12-1121 RHK/AJB, 2013 WL 656619, at *5 (D. Minn. Feb. 22, 2013) (finding "failure to timely provide a claim file is not actionable under § 1132(c)").

The departments' interpretation to the contrary is not entitled to deference. The FAQs are not an agency regulation subject to notice-and-comment rulemaking that require deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984). *See Northshore Min. Co. v. Sec;y of Lab.*, 709 F.3d 706, 708 (8th Cir. 2013). Rather the FAQs are an informal interpretation of ERISA and the regulations thereunder. Such informal guidance is entitled to deference pursuant to *Auer v. Robbins,* only to the degree that it is not "plainly erroneous or inconsistent with the regulation." 519 U.S. 452, 461 (1997). As explained above, FAQ 7 is contrary to the ordinary meaning of "instrument" as used in § 1024(b)(4).

F. **Count Seven should be dismissed because claims based upon gender dysphoria are not within the scope of the ADA.**

   1. *The ADA does not include gender dysphoria within the definition of "disability."*

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to … terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Under the ADA, the term "disability" is defined to explicitly exclude "transsexualism and gender identity disorders not resulting from physical impairments." 42 U.S.C. § 12211(b)(1); 29 C.F.R. § 1630.3. Considering the plain meaning of the statutory language, Congress intended to exclude gender identity disorders that do not result from a physical impairment, and courts have read this language literally to conclude that "gender dysphoria" is specifically excluded in cases such as this. *See Doe v. Northrop Grumman Sys. Corp.*, 418 F. Supp. 3d 921, 929 (N.D. Ala. 2019)

(explaining that "gender identity disorder" and "gender dysphoria" are legally synonymous); *Michaels v. Akal Sec., Inc.*, 09-CV-01300-ZLW-CBS, 2010 WL 2573988, at *6 (D. Colo. June 24, 2010) (finding gender dysphoria excluded from Section 504 of the Rehabilitation Act, which is comparable to the ADA). In fact, a recent opinion explained that the "text of the statute is unambiguous" and the court declined to explore the ADA's legislative history before concluding that gender dysphoria is excluded from the ADA's definition of disability. *Williams v. Kincaid*, 1:20-CV-1397, 2021 WL 2324162, at *2 (E.D. Va. June 7, 2021). Although neither the Eighth Circuit Court of Appeals nor this Court have reached this issue, the United States District Court for the Eastern District of Missouri has adopted a literal reading of the ADA, finding that the statute specifically exempts "transsexualism" from the definition of disability. *Kaprielian v. Stringer*, 4:15CV1598 CEJ, 2016 WL 1586488, at *2 (E.D. Mo. Apr. 20, 2016). The statutory text and judicial interpretation of the statute are clear that gender dysphoria is excluded from the definition of the ADA as a "gender identity disorder not resulting from physical impairments." 42 U.S.C. § 12211(b)(1); 29 C.F.R. § 1630.3. Because Plaintiff cannot satisfy the threshold requirement that she is "disabled" under the ADA, she cannot maintain a claim for disability discrimination.

> 2. *Plaintiff failed to exhaust administrative remedies with respect to her failure to accommodate claim, and it should, therefore, be dismissed.*

Count Seven includes a slim allegation that the Plan "fails to provide reasonable accommodation for Plaintiff's disability." (FAC ¶ 172). However, Plaintiff pleads no facts in support of this afterthought allegation. And there is a procedural barrier to Plaintiff's ability to bring this claim because she has not exhausted her administrative remedies by including such an allegation in her Charge of Discrimination. *See* **Exhibit 2**.[3]

---

[3] Plaintiff did not attach a copy of her Charge to the Complaint. However, because it is "incorporated by reference or integral to the claim" it can be considered on a motion to dismiss. *Kraxberger*, 756 F.3d at 1083 (8th Cir. 2014); *Lott*

While a discrimination lawsuit is not required to mirror the charge of discrimination, any judicial complaint can only encompass the scope of the EEOC investigation that could reasonably be expected to grow out of the charge of discrimination. *Cobb v. Stringer*, 850 F.2d 356, 359 (8th Cir. 1988). A failure to accommodate claim presents a theory of liability that is separate and distinct from a claim for disability discrimination under the ADA; as separate actions, they must be raised independently in a charge in order to later be asserted in court. *See e.g., Hammonds v. Union Elec. Co.*, 4:11CV1476 CDP, 2011 WL 6010919, at *2 (E.D. Mo. Dec. 2, 2011). While courts may be willing to liberally construe an administrative charge for exhaustion of remedies purposes, they also recognize that "there is a difference between liberally reading a claim which lacks specificity, and inventing, ex nihilo, a claim which simply was not made." *Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005) (internal quotations omitted) (discussing exhaustion requirement under Title VII).

Plaintiff did not reference a failure to accommodate in her Charge and alleged no facts in the Charge that would naturally lead to an investigation of such a claim. Because the failure to accommodate allegation was not raised in Plaintiff's Charge and has been insufficiently pled in the Complaint, it should be dismissed.

**G.    Count Eight's claim of alleged disability discrimination under the MHRA is preempted by ERISA and should be dismissed on that basis.**

ERISA preempts any state law that "relates to" an employee benefit plan governed by ERISA. 29 U.S.C. § 1144(a). The preemption provision is intended to be expansive, and state laws are preempted if they have a "connection with or reference to" an ERISA plan. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1987). The United States District Court for the Western District

---

*v. Maplewood Richmond Heights Sch. Dist.*, 4:19 CV 53 CDP, 2019 WL 2450932, at *1 n.2 (E.D. Mo. June 12, 2019) (considering Charge of Discrimination).

of Missouri has already found that the MHRA relates to applicable employee benefit plans in cases such as this because it "prohibits discrimination in the terms and privileges of employment" and "[m]edical benefits can be properly considered a privilege of employment." *Bennett v. Hallmark Cards Inc.*, 92-1073-CV-W-6, 1993 WL 327842, at *2 (W.D. Mo. Aug. 17, 1993).

In this case, Plaintiff's claim under the MHRA is intended to seek benefits available under the Plan and is not merely a claim of discrimination that incidentally seeks to recover benefits, solidifying that the claim "relates to" the Plan. *See id.* ("There is a distinction between a claim for a loss of benefits which is incidental to the larger claim for employment discrimination and a claim for loss of benefits where the alleged motivation for discrimination was the evasion of benefit payments."). Additionally, Plaintiff's MHRA claim "directly implicate[s] [Jack Henry's] right to exclude or limit health benefits under the terms of its plan" and "puts the plan itself at issue," rendering the MHRA claim preempted. *Id.* at *3. Thus, the MHRA claim is preempted by ERISA.

Furthermore, Plaintiff's MHRA disability claim is not exempt from preemption under the narrow exception to § 1144(a) for "state laws which effectuate another federal law." 29 U.S.C. § 1144(d). The exception would only apply if preemption of the MHRA "would subject the federal enforcement scheme established under the ADA to the sort of impairment the Supreme Court held … was intended to be avoided by § 1144(d), if the conduct were federally prohibited at the time it occurred. State law which prohibits conduct that is lawful under Title VII is not saved by § 1144(d) because preemption would not impair Title VII." *Id*. Unlike the ADA, the MHRA does not exclude gender dysphoria or gender identity–related conditions from the definition of disability. Mo. Rev. Stat. § 213.010.5. Thus, disability discrimination related to gender identity disorders and gender dysphoria are not prohibited by federal law but are unlawful under the MHRA. Because the conduct at issue here cannot be unlawful under the ADA as described above, preemption does not

impair the enforcement of federal law, and the exception to preemption is unavailable. Thus, there is no saving Plaintiff's MHRA disability claim from preemption and it must be dismissed.

## IV. Conclusion

For all of the foregoing reasons, Jack Henry and the Plan pray that this Court enter an order pursuant to Fed. R. Civ. P. 12 (b)(6): (1) dismissing Counts One, Two, Three, and Four as to Jack Henry and the Plan; (2) dismissing Counts Five and Seven in their entirety as to Jack Henry; and (3) dismissing Count VIII's MHRA disability claim as to Jack Henry. Jack Henry and the Plan further seek an order awarding them such further relief as this Court deems just and proper.

Dated: January 25, 2022      GREENSFELDER, HEMKER & GALE, P.C.

                 By:  /s/ Amy L. Blaisdell
                    Amy L. Blaisdell (Mo. Bar # 51068)
                    Heather M. Mehta (Mo. Bar #64026)
                    Lauren A. Daming (Mo. Bar #66472)
                    10 S. Broadway, Suite 2000
                    St. Louis, MO 63102
                    T: 314-241-9090 / F: 314-241-8624
                    apb@greensfelder.com
                    hmm@greensfelder.com
                    ldaming@greensfelder.com

***Attorneys for Jack Henry & Associates, Inc. and The Jack Henry & Associates, Inc. Group Health Benefit Plan***

## CERTIFICATE OF SERVICE

I certify that on January 25, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to the attorneys of record.

                    /s/ Amy L. Blaisdell