IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| SABRINA BRIONY DUNCAN,<br><br>*Plaintiff*,<br><br>*v.*<br><br>JACK HENRY & ASSOCIATES, INC. et al,<br><br>*Defendants*. | Case No: 21-03280-CV-S-WBG |

**DEFENDANT QUANTUM HEALTH, INC.'S SUGGESTIONS
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT**

# TABLE OF CONTENTS

                                                                                             Page

I. Relevant Factual Background .................................................................................... 1

II. Legal Analysis ............................................................................................................. 2

III. Plaintiff's Claim for Equitable Relief Fails as a Matter of Law ................................. 3

        A. *Plaintiff Cannot Sue Quantum for Benefits Under ERISA § 502(a)(1)(B).* .................................................................................... 3

        B. *ERISA Does Not Authorize Plaintiff's § 502(a)(1)(B) Claim Repackaged as a § 502(a)(3) Claim.* ............................................... 4

        C. *Counts Two and Three Are Duplicative of Count One and Should be Dismissed.* .................................................................... 5

IV. Plaintiff Fails to Allege a Plausible Parity Act Violation. ........................................... 8

V. Conclusion ................................................................................................................. 12

**CERTIFICATE OF SERVICE** ........................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A.H. by & through G.H. v. Microsoft Corp. Welfare Plan,*
  No. C17-1889-JCC, 2018 WL 2684387 (W.D. Wash. June 5, 2018) ......................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................2, 3

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ..................................................................................2, 3

*Collins v. 3M Co.*,
  17-529, 2017 WL 1755953 (D. Minn. May 4, 2017) ...........................................10, 11

*G.F. v. Blue Cross and Blue Shield of Texas*,
  21-cv-4079-MDH, 2021 WL 3557651 (W.D. Mo. Aug. 11, 2021) ...................10, 11

*Guthrie v. Dow Chem. Co.*,
  445 F.Supp. 311 (S.D. Tex. 1978) .......................................................................4

*Johnathan Z. v. Oxford Health Plans*,
  Case No. 2:18-cv-383-JNP-PMW, 2020 WL 607896 (D. Utah Feb. 7, 2020) ..........7

*Jones v. Aetna Life Ins. Co.*,
  856 F.3d 541 (8th Cir. 2017) ..........................................................................9, 10

*Jordan v. Aetna Life Ins. Co.*,
  No. 4:11 CV 635 DDN, 2012 WL 274693 (E.D. Mo. Jan. 31, 2012) .......................2

*Knowlton v. Anheuser-Busch Cos., LLC*,
  13-CV-210 SNLJ, 2013 WL 5873334 (E.D. Mo. Oct. 30, 2013) ...........................11

*Layes v. Mead Corp,*
  132 F.3d 1246 (8th Cir. 1998) ............................................................................3

*L.P. by and through J.P. v. BCBSM, Inc.*,
  No. 18-cv-1241, 2020 WL 981186 (D. Minn. Jan. 17, 2020) .................................6

*Michael M. v. Nexsen Pruet Grp. Medical and Dental Plan*,
  18-cv-00873, 2021 WL 1026383 (D. S. Car. Mar. 17, 2021) ..............................6, 7

*Noble Sys. Corp. v. Alorica Central, LLC,*
  543 F,3d 978, 982 (9th Cir. 2008) .......................................................................2

*N.R. by and through S.R. v. Raytheon Co.*
  No. 20-10153-RGS, 2020 WL 3065415 (D. Mass. June 9, 2020) ........................................ 7, 8

*O'Brien v. Sperry Univac*,
  458 F.Supp. 1179 (D.D.C. 1978) ..................................................................................... 4

*Ross v. Rail Car Am. Grp. Disability Income Plan*,
  285 F.3d 735 (8th Cir. 2002) ........................................................................................ 4, 5

*Schaaf v. Residential Funding Corp.*,
  517 F. 3d 544 (8th Cir. 2008) .......................................................................................... 3

*Silva v. Metro. Life Ins. Co.*,
  762 F.3d 711 (8th Cir. 2014) ....................................................................................... 9, 10

**Federal Statutes**

29 U.S.C.
  § 1132(a)(1)(B) .................................................................................................................. 1
  § 1132(a)(1) (§ 502(a)(1) of ERISA) ............................................................................. 4, 5
  § 1132(a)(3) ....................................................................................................................... 5
  § 1132(a)(3)(A) .................................................................................................................. 1
  § 1132(a)(3)(B) .................................................................................................................. 1
  § 1185a(a)(3)(A)(ii) ........................................................................................................... 5

*ERISA*
  *§ 502(a)(1)(B)* ........................................................................................................ *passim*
  *§ 502(a)(3)* ............................................................................................................. *passim*

**Other Authorities**

29 C.F.R. § 2590.712 .................................................................................................................. 6

29 C.F.R. § 2590.712(c)(2)(i) ..................................................................................................... 5

29 C.F.R. § 2590.712(c)(4)(i) ..................................................................................................... 5

Fed. R. Civ. P. 8(a) ..................................................................................................................... 2

Fed. R. Civ. P. 12(b)(6) .............................................................................................................. 1

## DEFENDANT QUANTUM HEALTH, INC.'S SUGGESTIONS IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Quantum Health ("Quantum") moves for dismissal of Plaintiff Sabrina Briony Duncan's ("Plaintiff") Amended Complaint ("Am. Compl." or "Amended Complaint") against it, as Plaintiff has not alleged any claim against Quantum upon which relief can be granted. Quantum offers the following suggestions in support of its motion in accordance with Local Rule 7.0. Further, to the extent any additional arguments are advanced in the Suggestions of Defendants Jack Henry & Associates, Inc., The Jack Henry & Associates, Inc. Group Health Benefit Plan, or UMR, Inc., Quantum incorporates them by reference as if fully incorporated herewith.

As described below, Plaintiff contends that Quantum breached its fiduciary duty to her under 29 U.S.C. § 1132(a)(1)(B) in Count One by denying her request for precertification of coverage for her prescribed facial feminization surgery ("FFS"). As one purported alternative, Plaintiff seeks injunctive relief in Count Two under 29 U.S.C. § 1132(a)(3)(A). As a second purported alternative, Plaintiff requests equitable relief in Count Three under 29 U.S.C. § 1132(a)(3)(B). In Count Four, Plaintiff contends that Quantum violated the Mental Health Parity and Addiction Equity Act of 2008 ("Parity Act") by denying Plaintiff's request for FFS. However, Quantum is not a proper defendant as contemplated by federal law. Yet, even if Quantum were a proper defendant, Plaintiff has failed to allege sufficient facts to plausibly establish any Employee Retirement Income Security Act of 1974 ("ERISA") or Parity Act violations.

### I. Relevant Factual Background

Plaintiff alleges that she is a participant in the Jack Henry & Associates, Inc. Group Health Benefit Plan ("Plan"). Am. Compl. ¶ 11. The Plan is a self-funded health and welfare benefit plan

sponsored by Jack Henry & Associates, Inc. ("JHA") and governed by ERISA. *Id.* ¶ 13. The Plan covers both medical/surgical benefits and mental health/substance use disorder benefits. *Id.* ¶ 16. The Plan incorporates a care coordination process by Quantum, which is intended to cover precertification requests as well as requests for out of network care. *Id.* ¶¶ 15, 20-21. According to the Summary Plan Document ("SPD" or "Plan Document"), JHA is the Plan Administrator while UMR, Inc. ("UMR") is the third-party administrator for medical claims. Ex. A, SPD at 1. *See Jordan v. Aetna Life Ins. Co.*, No. 4:11 CV 635 DDN, 2012 WL 274693, *8 n. 4 (E.D. Mo. Jan. 31, 2012) (citing *Noble Sys. Corp. v. Alorica Central, LLC*, 543 F.3d 978, 982 (8th Cir. 2008) (noting that a court may consider plan documents, like the Summary Plan Description, despite not being attached to Plaintiff's Complaint, without converting the motion to a summary judgment motion because the plan documents are "necessarily embraced by the pleadings.")).

According to Plaintiff's Amended Complaint, Dr. Boumany Kyle Keojampa requested precertification of coverage for a number of extensive FFS procedures on or about May 27, 2020 on Plaintiff's behalf. Am. Compl. ¶¶ 74-76. Given the nature of the request, it was submitted to Quantum's care coordination process as set forth in the SPD. *Id.* ¶ 76. As the SPD did not provide for cosmetic procedures, Quantum informed Plaintiff that it was unable to certify the request. *Id.* ¶ 78. Plaintiff appealed the denial, and the denial was upheld on August 13, 2020. *Id.* ¶ 82. Plaintiff's second level appeal was also upheld on October 5, 2020. *Id.* ¶ 84. In lieu of filing an external appeal, Plaintiff filed her Complaint with this Court on October 26, 2021. Quantum and the other Defendants filed separate Motions to Dismiss, and Plaintiff filed an Amended Complaint on December 28, 2021.

**II. Legal Analysis**

While Fed. R. Civ. P. 8(a) does not require "detailed factual allegations," the Supreme

2

Court has held that "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). In other words, a pleading must contain sufficient "factual content t[o] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Consequently, a pleading is insufficient when it fails to provide sufficient factual information to provide the grounds upon which the claim rests, and to raise a right to relief above the speculative level. *Schaaf v. Residential Funding Corp.*, 517 F. 3d 544, 549 (8th Cir. 2008).

### III. Plaintiff's Claim for Equitable Relief Fails as a Matter of Law.

#### A. *Plaintiff Cannot Sue Quantum for Benefits Under ERISA § 502(a)(1)(B).*

Plaintiff's purported claim for benefits (Count One), and its alternative claims for injunctive relief (Count Two) and equitable relief (Count Three), fail because Quantum is not a proper defendant under ERISA § 502(a)(1)(B). Like the First, Second, Sixth, Seventh, and Eleventh Circuits, the Eighth Circuit has held that the only proper defendants under § 502(a)(1)(B) are the plan itself or the plan administrator. In *Layes v. Mead Corp.*, a plaintiff benefit plan participant sought to recover ERISA benefits and sued both his employer (Mead) and the plan administrator (CNA) that denied his benefits. 132 F.3d 1246, 1248-49 (8th Cir. 1998). In finding the employer an improper defendant, the Eighth Circuit held:

> CNA was at all relevant times the sole administrator of the long-term disability plan offered by Mead. Thus, Mead was not a proper party defendant. *See Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir.1997) ("The proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan"). *See also Daniel v. Eaton Corp.*, 839

3

> F.2d 263, 266 (6th Cir.1988) ("Unless an employer is shown to control administration of a plan, it is not a proper party defendant in an action concerning benefits").

*Id.* at 1249.

Plaintiff did not allege in her original Complaint and does not allege now that Quantum is the plan or the plan administrator, nor has Plaintiff alleged plausible facts suggesting that Quantum controls the Plan. Plaintiff only broadly alleges that Quantum "mak[es] benefit determinations under Plaintiff's Plan" and "exercised discretion with respect to the administration of Plaintiff's Plan." Am. Compl. ¶ 117. Rule 8 demands more, especially given that Plaintiff elsewhere acknowledges that the JHA is the named Plan Administrator and the "Named Fiduciary for the Plan" (*see, e.g.*, *id.* ¶ 17) and that UMR is the named "Third Party Administrator" (*id.* ¶ 18). As Quantum is neither the plan nor the plan administrator, and Plaintiff has not alleged that Quantum is either the plan or the plan administrator, Counts One and Two of the Complaint must be dismissed against Quantum.

### B. *ERISA Does Not Authorize Plaintiff's § 502(a)(1)(B) Claim Repackaged as a § 502(a)(3) Claim.*

Plaintiff has pled a § 502(a)(3) claim mischaracterized as a claim for benefits under § 502(a)(1)(B), such that Count One should be dismissed. Namely, Plaintiff asserts that Count One is a claim for benefits (Am. Compl. ¶ 111); however, her ultimate goal is to reform the Plan by invalidating portions of the SPD. "Section 502(a)(1)(B) does not authorize such a claim." *Ross v. Rail Car Am. Grp. Disability Income Plan*, 285 F.3d 735, 740 (8th Cir. 2002). *See also O'Brien v. Sperry Univac*, 458 F.Supp. 1179, 1180 (D.D.C. 1978) (holding that suit seeking to have a portion of a "plan declared void because the summary plan description appears to alter the terms of the original plan . . . is not a claim under the 'terms of the plan'"); *Guthrie v. Dow Chem. Co.*, 445 F.Supp. 311, 314–15 (S.D. Tex. 1978) (holding that plaintiffs who seek to have a portion of plan

4

declared illegal for constitutional and ERISA violations do not state claim under section 502(a)(1)(B)).

In *Ross*, the plaintiff asserted that he was seeking a claim for benefits under 29 U.S.C. § 1132(a)(1) (§ 502(a)(1) of ERISA), however, "his ultimate goal [was] to continue receiving disability income benefits from Canada Life." 285 F.3d at 740. Yet, "[S]ection 502(a)(1)(B) authorizes a participant to bring an action to recover benefits, enforce rights, or clarify rights to future benefits *under the terms of the plan.*" *Id.* (emphasis in original). Essentially, Ross was not seeking to obtain benefits under the terms of the Plan but rather to "reform the Plan by obtaining a declaration that" particular amendments reducing the maximum benefit period were void. *Id.* The Court determined that § 502(a)(1)(B) does not authorize such a claim and that seeking to invalidate portions of the plan language "can *only* be characterized as arising under 29 U.S.C. § 1132(a)(3)." *Id.* at 741 (emphasis added).

According to the Eighth Circuit, § 502(a)(3) of ERISA is *the* "provision which authorizes a participant to bring an action to enjoin any act which violates either a provision of ERISA . . . or the terms of the plan, or to obtain other appropriate equitable relief to enforce any provisions of Title I or the terms of the plan." *Ross*, 285 F.3d at 741. Like the plaintiff in *Ross*, Plaintiff here "ultimately seeks a restoration of full benefits" but the vehicle for that requested relief is invalidation of portions of the plan under § 502(a)(1) *not* § 502(a)(3). *Id.* Given Plaintiff's requested relief, she has failed to adequately allege a claim under Section 502(a)(1)(3), and Count One of her Complaint should be dismissed.

### C. *Counts Two and Three Are Duplicative of Count One and Should be Dismissed.*

Regardless, Plaintiff's claims for "injunctive relief" (Count Two) and "equitable relief" (Count Three) are virtually indistinguishable from Count One and should thus be dismissed. Eighth

Circuit law is clear that a plaintiff can plead alternative ERISA claims under both Section 502(a)(1)(B) and Section 502(a)(3) *only* when the claims for relief are based on separate and distinct theories of liability. *See Jones v. Aetna Life Ins. Co.*, 856 F.3d 541, 547 (8th Cir. 2017) (citing *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 728 (8th Cir. 2014). For example, in *Silva*, the Eighth Circuit permitted Section 502(a)(1)(B) and Section 502(a)(3) claims to proceed simultaneously where the claim for equitable relief was pled in the alternative and based on an entirely separate theory of liability. *Id.* at 727. The plaintiff in *Silva* initially sought life insurance benefits under § 502(a)(1)(B) and subsequently moved to amend his claim to assert a claim under § 502(a)(3). *Id.* at 728, n. 12. The district court denied plaintiff's motion to amend as futile on the basis that the money damages plaintiff sought were unavailable under § 502(a)(3). On appeal, the Eighth Circuit reversed the lower court based on its finding that plaintiff's claims under § 502(a)(1)(B) and § 502(a)(3) were premised on completely separate and distinct theories of liability. *Id.* at 726. Emphasizing the alternative nature of the plaintiff's claims the Court stated:

> Under § 1132(a)(1)(B), Silva is arguing that the insurance policy was valid and that [the decedent's] failure to provide evidence of insurability does not alter the policy. In the alternative, under § 1132(a)(3), Silva is arguing that if [the] policy was never validly approved and therefore did not go into effect due to the missing Statement of Health form, [the insurer and employer were] still liable to him due to fiduciary misconduct. These arguments assert different theories of liability.

*Id.* at 728. *See also Jones*, 856 F.3d at 547 (permitting plaintiff to assert claims under both Section 502(a)(1)(B) and Section 502(a)(3) because the claims articulated separate and distinct theories of liability).

In cases where plaintiffs fail to plead separate and distinct theories of liability to support their Section 502(a)(1)(B) and Section 502(a)(3) claims, courts within the Eighth Circuit have dismissed the duplicative Section 502(a)(3) claim. *See G.F. v. Blue Cross and Blue Shield of Texas*,

6

21-cv-4079-MDH, 2021 WL 3557651, at *2 (W.D. Mo. Aug. 11, 2021) (dismissing Count II as duplicative as Counts I and II "seek the same remedy . . . pursuant to the same theory of liability . . . under the same statutory section of ERISA."). *See also Collins v. 3M Co.*, 17-529 (DSD/DTS), 2017 WL 1755953, at *2 (D. Minn. May 4, 2017) (distinguishing plaintiff's claims from those in *Silva* and dismissing a § 502(a)(3) claim on the grounds that the claim was duplicative, as plaintiff's claims were indistinguishable rather than alternative and were based on the same facts and sought the same relief).

In the present case, Plaintiff's "injunctive relief" and "equitable relief" claims are premised on Defendants' purported failure to provide any medical benefits under the terms of the Plan. In contrast to the claims in *Silva* and *Jones*, which were based on *separate and distinct theories of liability*, Counts Two and Three of Plaintiff's Amended Complaint merely seek benefits due under the Plan. In fact, Plaintiff even states in Count One that she "seeks the relief below" to remedy her claims (i.e., the relief specified in Counts Two and Three). *See* Am. Compl. ¶ 12. Indeed, incorporating Count One by reference, Plaintiff's articulated liabilities in Counts Two and Three are identical to the bases of liability supporting her purported Section 502(a)(1)(B) claim in Counts One. Because Counts Two and Three are premised on the *same theories of liability* and on the same facts as Plaintiff's claims in Count One, Counts Two and Three are deficient and fail under Eighth Circuit law. *See G.F.*, 2021 WL 3557651 at *2 (dismissing "equitable relief" claim as being duplicative of § 502(a)(1)(B) claim); *Collins*, 2017 WL 1755953 at *2 (dismissing (a)(3) claim where it sought the same relief based on the same facts as the plaintiff's benefit claim); *Knowlton v. Anheuser-Busch Cos., LLC*, 13-CV-210 SNLJ, 2013 WL 5873334, at *4 (E.D. Mo. Oct. 30, 2013) (granting motion to dismiss § 502(a)(3) claim based on same theory of liability as § 502(a)(1)(B) claim). Accordingly, Counts Two and Three should be dismissed with prejudice.

### IV. *Plaintiff Fails to Allege a Plausible Parity Act Violation.*

The Parity Act bars a group health benefits plan from disfavoring mental health or substance use disorder benefits. *See* 29 U.S.C. § 1185a(a)(3)(A)(ii). *See also* 29 C.F.R. § 2590.712(c)(2)(i) (prohibiting a plan from applying "any financial requirement or treatment limitation to mental health or substance use disorder benefits in any classification that is more restrictive than the predominant financial requirement or treatment limitation of that type applied to substantially all medical/surgical benefits in the same classification"). In particular, a plan may not impose non-quantitative treatment limitations more stringently to the mental health benefits than comparable medical and surgical benefits "under the terms of the plan (or health insurance coverage) as written" or "in operation, any processes, strategies, evidentiary standards, or other factors used in applying the [limitations]." 29 C.F.R. § 2590.712(c)(4)(i).

To state a Parity Act claim, a plaintiff must plausibly allege either that the benefits plan, on its face, discriminates against mental health treatment or coverage, or that the plan is discriminatory in application. *L.P. by and through J.P. v. BCBSM, Inc.*, No. 18-cv-1241 (MJD/DTS), 2020 WL 981186, at *6 (D. Minn. Jan. 17, 2020).

> Where a group health plan provides both medical/surgical benefits and mental health/substance use disorder benefits, the law requires that 'the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits . . . .'

*Michael M. v. Nexsen Pruet Grp. Medical and Dental Plan*, 18-cv-00873, 2021 WL 1026383, at *10 (D. S. Car. Mar. 17, 2021) (citing 29 U.S.C. § 1185a(a)(3)(A)(ii)). "Treatment limitations under the [Parity Act] can be quantitative or nonquantitative . . . [which] otherwise limit the scope or duration of benefits for treatment under a plan or coverage." *Id.* Nonquantitative limitations include, for example, "[m]edical management standards limiting or excluding benefits based on

8

medical necessity or medical appropriateness or based on whether the treatment is experimental or investigative." *Id.* (citing 29 C.F.R. § 2590.712(c)(4)(ii)(A)). Pursuant to 29 C.F.R. §2590.712:

> A group health plan ... may not impose a nonquantitative treatment limitation with respect to mental health or substance use disorder benefits in any classification unless, under the terms of the plan ... as written and in operation, any processes, strategies, evidentiary standards, or other factors used in applying the nonquantitative treatment limitation to mental health or substance use disorder benefits in the classification are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors used in applying the limitation with respect to medical/surgical benefits in the classification.

"In short, a plan may not impose a nonquantitative limitation for mental health or substance use disorder benefits that is more restrictive than the limitations on comparable medical/surgical benefits." *Nexsen*, 2021 WL 1026383 at *10 (citing *A.H. by & through G.H. v. Microsoft Corp. Welfare Plan*, No. C17-1889-JCC, 2018 WL 2684387, at *6 (W.D. Wash. June 5, 2018)). *See also Johnathan Z. v. Oxford Health Plans*, Case No. 2:18-cv-383-JNP-PMW, 2020 WL 607896, at *15 (D. Utah Feb. 7, 2020) ("[F]or a facial Parity Act claim, Plaintiffs must plausibly allege that the Plan imposes 'separate treatment limitations' only on mental health/substance abuse services or promulgates 'more restrictive treatment limitations' for mental health/substance abuse care than the Plan uses for the analogous covered medical/surgical services.") (quoting 29 U.S.C. § 1185a(a)(3)(A)(ii)).

Plaintiff fails to adequately identify any analogous medical or surgical benefit covered by the Plan as is required to state a Parity Act violation. While not from the Eighth Circuit, the District of Massachusetts case *N.R. by and through S.R. v. Raytheon Co.* is particularly instructive. In *Raytheon*, N.R. brought four ERISA claims, alleging defendants' exclusion of coverage for non-restorative speech therapy as an autism spectrum disorder treatment violates the Parity Act. No. 20-10153-RGS, 2020 WL 3065415, at *1 (D. Mass. June 9, 2020). Namely, N.R. contended that

9

the Plan violated the Parity Act because: 1) "[t]here is no general exclusion for 'non-restorative' treatment in the Plan"; 2) "[t]here is no special exclusion in the Plan for 'non-restorative' treatment that applies to medical and surgical conditions"; and 3) the Plan contains a "habilitative exclusion . . . [which] applies only to mental health services." *Id.* at *9. Citing to the Plan's definition of "habilitative services," N.R. asserted that "under the plain language of the Plan document and N.R.'s administrative records, the only services that are subject to the Plan's 'non-restorative' exclusions are services that are used to treat developmental health conditions, such as ASD." *Id.* (citation omitted). Defendants countered that N.R.'s coverage was instead denied pursuant to an exclusion in the Plan "that limits coverage for [all] speech therapy to that which is 'restorative,' i.e. intended to regain a level of speech that was 'previously intact.'" *Id.* at *10 (alterations in original). This exclusion applied to all coverage regardless of the type of condition the speech therapy is intended to treat and the Plan's language did not differentiate between mental health benefits and medical/surgical benefits. *Id.*

The district court noted that the Plan contained an "Exclusions" section which provides for a blanket exclusion of all "*[h]abilitative services* for maintenance/preventative treatment." *Id.* (emphasis in original). In addition, the Plan "expressly links the habilitative services and non-restorative speech therapy exceptions, presenting the latter as an example of the former." Concluding that "[n]either the Plan's non-restorative speech therapy exclusion nor the habilitative services exclusion purports on its face to address only mental health benefits . . . the Plan's simultaneous presentation of generically applicable habilitative services and non-restorative speech therapy exclusions" did not support N.R.'s facial challenge under the Parity Act.

Similarly, Plaintiff's allegations here are not sufficient to establish a facial challenge under the Parity Act. Plaintiff alleges that the Plan excludes coverage for surgeries that alter appearance

10

but only when they are used for psychological or emotional reasons. Am. Compl. ¶¶ 50-54. Yet, Plaintiff ignores that the Plan excludes *all* Cosmetic and Reconstructive Surgeries unless otherwise covered. Indeed, "Cosmetic Treatment, Cosmetic Surgery, or any portion thereof" is generally excluded from coverage "*unless the procedure is otherwise listed as a covered benefit.*" Ex. A at 103 (emphasis added). As defined in the Plan Document, "Cosmetic Treatment means medical or surgical procedures that are primarily used to improve, alter, or enhance appearance, whether or not for psychological or emotional reasons." *Id.* at 129. Essentially, cosmetic treatments are excluded regardless of whether the surgery is to treat medical or mental health conditions. While Plaintiff claims that the Plan's definition of "Cosmetic Treatment" only applies to surgeries "when they are prescribed *solely* for psychological reasons" (Am. Compl. ¶ 138 (emphasis added)), the SPD itself defines "Cosmetic Treatment" as "medical or surgical procedures that are primarily used to improve, alter, or enhance appearance, whether or not for psychological or emotional reasons." Ex. A at 129. There are no exceptions to the definition.

Likewise, "Reconstructive Surgery" is excluded "when performed only to achieve a normal or nearly normal appearance, and not to correct an underlying medical condition or impairment, as determined by the Plan, unless covered elsewhere in th[e] SPD." Ex. A at 106. Reconstructive surgery is defined as "surgical procedures performed on abnormal structures of the body caused by congenital Illness or anomaly, Accident, or Illness" and makes no distinction between physical or mental illness. *Id.* at 137. Further, the Plan does expressly cover gender transition including "[t]reatment, drugs, medicines, services, and supplies for, or leading to, gender transition surgery." *id.* at 56. As the Plan simultaneously presents applicable treatment for Gender Dysphoria (i.e., gender transition surgery) and generically applicable cosmetic and reconstructive surgery exclusions, Plaintiff cannot establish a facial challenge under the Parity Act, and Count Four

11

should be dismissed.

## V. Conclusion

For the reasons stated above, Defendant Quantum Health, Inc. respectfully requests that this Court dismiss Counts One through Four of Plaintiff's Amended Complaint with prejudice against Quantum Health, Inc.

Respectfully submitted,

*/s/ Rachel Smoot*
Danne Wayne Webb (MO #39384)
Horn Aylward & Bandy, LLC
2600 Grand Boulevard
Suite 1100
Kansas City, MO 64108
Phone: (816) 421-0700
Fax: (816) 421-0899
Email: dwebb@hab-law.com


David J. Butler (*pro hac vice*)
Rachel Smoot (*pro hac vice*)
TAFT STETTINIUS & HOLLISTER LLP
65 East State Street, Suite 1000
Columbus, OH 43215
Tel: (614) 221-2838
Fax: (614) 221-2007
Email: dbutler@taftlaw.com
         rsmoot@taftlaw.com

*Attorneys for Defendant Quantum Health, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 25, 2022 a copy of the foregoing was served upon all counsel of record via the Court's electronic filing system.

*/s/ Rachel Smoot*